UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NATHAN DWAYNE PATWIN,

               Petitioner,

                                       CASE NO. 12-15604
v.                              HONORABLE GEORGE CARAM STEEH

MARY BERGHUIS,

               Respondent.
_____/


## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DENYING A CERTIFICATE OF APPEALABILITY, BUT
## GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

      This matter has come before the Court on petitioner Nathan Dwayne Patwin's

pro se habeas corpus petition under 28 U.S.C. § 2254.  Petitioner is challenging his

state convictions for felonious assault, Mich. Comp. Laws § 750.82, armed robbery,

Mich. Comp. Laws § 750.529, felon in possession of a firearm, Mich. Comp. Laws §

750.224f, and possession of a firearm during the commission of a felony (felony

firearm), Mich. Comp. Laws § 750.227b.  He alleges that (1) his pre-trial line-up was

unduly suggestive and there was no independent basis for the in-court identification of

him and (2) no rational trier of fact could have found the essential elements of the

crimes beyond a reasonable doubt.  Respondent Mary Berghuis urges the Court to

deny the habeas petition on grounds that petitioner's claims lack merit and his first claim

also is procedurally defaulted.  The Court agrees.  Accordingly, the habeas petition will

be denied.

## I. BACKGROUND

Petitioner was charged in Wayne County, Michigan with six felonies: assault with intent to commit murder, felon in possession of a firearm, felony firearm, and three counts of armed robbery. At his bench trial in Wayne County Circuit Court, the evidence established that,

> [a]t approximately 5:30 or 6:00 p.m. on January 7, 2010, Samoil Diaconescu drove his Ford F–150 to Prevost Street in Detroit, Michigan. He was with his employee, Cornelius Ware, and Ware's friend, Matthew Fernandez. Diaconescu buys and sells cell phones for a living. He received a tip from "Shana" that a man named L.J. had phones to sell and would meet Diaconescu on Prevost. Diaconescu pulled up just down the street from the address that Shana provided. The men waited in the truck for approximately five to ten minutes for L.J. They called Shana, who told them to "wait two more minutes." Two men approached the truck on foot. Ware and Fernandez asked the men if one of them was named L.J. The men did not answer and instead started shooting at the truck.

> Diaconescu testified that defendant was one of the men who approached the car and began shooting. He saw defendant holding what he thought was a revolver. After defendant fired the second shot, Diaconescu jumped out of the truck through the driver's side door and ran between two houses. Defendant chased Diaconescu and continued shooting at him five or six more times. Diaconescu tripped and fell. Diaconescu took everything out of his pockets and put it on the ground. He had about $100. According to Diaconescu, he was about a foot and a half to two feet away from defendant. He had a clear view of defendant's face. Defendant asked him "[w]here's all the money." Diaconescu told him that everything was in the truck. Defendant picked Diaconescu's money off the ground and went back to the truck. Diaconescu ran to a local store and asked the employees to call the police. He gave a statement to the police but did not give them Shana's number because he claimed that he did not have it and he did not want to get her involved. Diaconescu identified defendant as one of the shooters in court.

> Fernandez testified that he fell on the floor in the backseat of the truck when the first shots were fired. When he looked up there was no one in the car, so he got in the front seat and attempted to "pull off." A man "snatched" him out of the truck, aimed a gun at him and made him empty his pockets. He gave the man his cell phone. Another man told the first man, "Don't shoot him." The two men got in Diaconescu's truck and

-2-

> Fernandez ran to a nearby store. Fernandez described the men that fired the shots as a "light-skinned short guy" and a "dark-skinned tall guy" with a five o'clock shadow or some facial hair. In court, Fernandez was unable to identify defendant as the shooter.
>
> Ware testified that he was in the passenger seat of Diaconescu's truck and he was on the phone with Shana when the shooting began. He described the shooters as a "light-skinned man with a short haircut" and a "tall, dark-skinned man" wearing a hood. He testified that both men had handguns and were shooting. Ware stated that he was shot in his right hand as he was attempting to block his head with his hand and get out of the car. Ware ran to a nearby restaurant and was eventually taken to the hospital. In court, Ware was also unable to identify defendant as the shooter.
>
> Investigator Emerson, the officer-in-charge on the case, testified that he did not take pictures or impound Diaconescu's truck, attempt to recover any bullets from the truck, dust the truck for fingerprints, get Diaconescu's phone records or make any other attempts to find Shana. Investigator Emerson testified that, in his experience, none of these actions would have furthered the investigation.

People v. Patwin, No. 300013, 2012 WL 164077 (Mich. Ct. App. Jan. 19, 2012).

On July 20, 2010, the trial court found petitioner guilty of felonious assault (as a lesser-included offense of assault with intent to commit murder), one count of armed robbery (the robbery of Diaconescu), felon in possession of a firearm, and felony firearm. The court acquitted petitioner of the two counts of armed robbery involving Fernandez and Ware. On August 6, 2010, the trial court sentenced petitioner to two years in prison for the felony-firearm conviction, followed by concurrent prison terms of one and a half to four years for the felonious assault conviction, twelve to twenty-five years for the armed robbery conviction, and two to five years for the felon-in-possession conviction.

Petitioner raised his habeas claims on appeal from his convictions. The Michigan Court of Appeals affirmed his convictions, see id., and on June 25, 2012, the Michigan

-3-

Supreme Court denied leave to appeal because it was not persuaded to review the

issues.  See People v. Patwin, 491 Mich. 945; 815 N.W.2d 432 (2012) (table).  On

December 20, 2012, petitioner filed his habeas corpus petition in this Court.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  Harrington v. Richter,

562 U.S. 86, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, the Court may not

grant a state prisoner's application for the writ of habeas corpus unless the state court's

adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court
> may grant the writ if the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application"
> clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the
> state court identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for

Part II).  "[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)."  Renico v. Lett, 559 U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

### III.  Analysis

**A.  The Pretrial Line-up**

Petitioner alleges that his pretrial line-up was unduly suggestive and that there was no independent basis for Diaconescu's in-court identification of him.  Petitioner contends that he was the only person in the line-up with a full beard and that the suggestive line-up could have steered Diaconsecu to identify him, independent of his recollection of the crime.  As a result, petitioner claims that his rights to due process of law and a fair trial were denied.

The Michigan Court of Appeals reviewed petitioner's claim for "plain error affecting substantial rights" because petitioner did not preserve his claim for appellate

review by moving to suppress the identification testimony.  The Court of Appeals ultimately concluded that the lineup was not so suggestive as to lead to a substantial likelihood of misidentification and, even if it were, there was an independent basis for Diaconescu's in-court identification of petitioner.

## 1.  Procedural Default

### a.  The Doctrine

Respondent argues that petitioner's claim is procedurally defaulted.  A procedural default is "a critical failure to comply with state procedural law."  Trest v. Cain, 522 U.S. 87, 89 (1997).  The doctrine of procedural default prohibits a federal court from reviewing the merits of a habeas petitioner's claims, including constitutional claims, if a state court declined to hear the claims because the petitioner failed to abide by a state procedural rule.  Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012).  A prisoner may obtain relief on a procedurally defaulted claim only if he or she "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

### b.  The Factors

In this Circuit

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each
> of the following four factors is met:  (1) the petitioner failed to comply with
> a state procedural rule; (2) the state courts enforced the rule; (3) the state
> procedural rule is an adequate and independent state ground for denying
> review of a federal constitutional claim; and (4) the petitioner has not
> shown cause and prejudice excusing the default."  [Jalowiec v. Bradshaw,
> 657 F.3d 293, 302 (6th Cir. 2011)].  To determine whether a state
> procedural rule was applied to bar a habeas claim, [courts] look "to the last

reasoned state court decision disposing of the claim." <u>Guilmette v.</u>
<u>Howes</u>, 624 F.3d 286, 291 (6th Cir. 2010) (<u>en banc</u>).

<u>Henderson v. Palmer</u>, 730 F.3d 554, 560 (6th Cir. 2013).

In Michigan, defendants in criminal cases are required to preserve their claims
for appeal by first making an objection in the trial court. <u>People v. Carines</u>, 460 Mich.
750, 761-65; 597 N.W.2d 130, 137-39 (1999). Failure to object at trial to an in-court
identification precludes appellate review absent manifest injustice. <u>People v. Daniels</u>,
163 Mich. App. 703, 710; 415 N.W.2d 282, 285 (1987); <u>see</u> <u>People v. Lee</u>, 391 Mich.
618, 626-627; 218 N.W.2d 655, 659 (1974) ("We do not examine the question of
suggestiveness because there was no motion at trial to suppress the photographic
identification testimony, nor evidentiary hearing on this matter to give us a record on
which to make a judgment.").

Petitioner violated this rule by not asking the trial court to suppress the
identification testimony. Although he moved to dismiss the case at the preliminary
examination in state district court, he did not move to suppress identification testimony
after the case was transferred to state circuit court. Therefore, the first element of
procedural default (failure to comply with a state procedural rule) is satisfied.

The second element of procedural default is enforcement of a state procedural
rule. The Michigan Court of Appeals was the only state court to adjudicate petitioner's
claim in a reasoned opinion. As noted above, it reviewed petitioner's claim for "plain
error affecting substantial rights" because petitioner failed to preserve the issue for
appellate review by moving to suppress the identification testimony. A state appellate
court's review for "plain error" constitutes enforcement of a state procedural rule. <u>Hinkle</u>

v. Randle, 271 F.3d 239, 244 (6th Cir. 2001).  The second element of procedural default is satisfied.

The third element of procedural default requires determining whether the state procedural rule was an adequate and independent state ground for denying review of a federal constitutional claim.  "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review."  Biros v. Bagley, 422 F.3d 379, 387 (6th Cir. 2005) (citing Abela v. Martin, 380 F.3d 915, 921 (6th Cir. 2004)).

"[T]he procedural rule requiring objection below to preserve an issue on appeal is both firmly established and regularly followed by Michigan state courts," Morgan v. Lafler, 452 F. App'x 637, 647 (6th Cir. 2011), and the Michigan Court of Appeals actually relied on the rule to foreclose relief.  Consequently, the state appellate court's ruling in this case was an adequate and independent state ground for denying review of Petitioner's constitutional claim.

The fact that the Court of Appeals also addressed the merits of petitioner's claim "does not require [this Court] to disregard the state court's finding of procedural bar." Coe v. Bell, 161 F.3d 320, 330 (6th Cir. 1998).  As explained in Harris v. Reed, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an alternative holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.  See Fox Film Corp. v. Muller, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [Wainwright v.] Sykes [433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate

-8-

basis for decision.  In this way, a state court may reach a federal question
without sacrificing its interests in finality, federalism, and comity.

Id. at 264 n.10 (emphasis in original).

To summarize, petitioner violated a relevant state procedural rule, the last state

court to review his claim in a reasoned opinion enforced the rule, and the rule was an

adequate and independent state ground for precluding review of petitioner's federal

claim.  Federal habeas review of petitioner's claim therefore is barred unless he can

"demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider [his] claim[] will result in a

fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.

### c.  Cause and Prejudice; Miscarriage of Justice

Petitioner has not asserted "cause" for his procedural default, and, in the

absence of cause and prejudice, a petitioner can proceed with a procedurally defaulted

claim only if he "demonstrate[s] that the failure to consider [his claim] will result in a

fundamental miscarriage of justice.  A fundamental miscarriage of justice results from

the conviction of one who is 'actually innocent.' "  Lundgren v. Mitchell, 440 F.3d 754,

764 (6th Cir. 2006) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  "To be credible,

such a claim requires petitioner to support his allegations of constitutional error with new

reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence – that was not presented at trial."  Schlup v. Delo,

513 U.S. 298, 324 (1995).  "A petitioner's burden at the gateway stage is to

demonstrate that more likely than not, in light of the new evidence . . . any reasonable

juror would have reasonable doubt."  House v. Bell, 547 U.S. 518, 538 (2006).

Petitioner has not produced any new evidence of actual innocence, and the evidence against him at trial was substantial.  Therefore, a miscarriage of justice would not occur if the Court failed to address petitioner's claim on the merits.  His claim is procedurally defaulted.

### 2. On the Merits

Even if petitioner's claim were not defaulted, it lacks merit.  To prevail on his claim that Diaconescu's identification testimony derived from a suggestive identification procedure, petitioner must show that the identification procedure was " 'so unnecessarily suggestive and conductive to irreparable mistaken identification that he was denied due process of law.' " Neil v. Biggers, 409 U.S. 188, 196 (1972) (quoting Stovall v. Denno, 388 U.S. 293, 301-02 (1967)).  If it was, the question becomes "whether under the 'totality of the circumstances,' the identification was reliable even though the confrontation procedure was suggestive."  Id. at 199.

### a. Suggestiveness

There were five men, including petitioner, in the line-up, and, according to Sergeant Todd Eby, who conducted the line-up, all of the men had facial hair, and three of them had beards.  (Trial Tr. Vol. I, 54, 63-65, July 19, 2010; Trial Tr. Vol. II, 7-8, July 20, 2010.)  The trial court, however, determined that petitioner was the only person with a full beard and that he had the darkest complexion, although two other men in the lineup also were dark complected.  (Trial Tr. Vol. II, 68-69, July 20, 2010.)  The trial court opined that the line-up was suggestive enough that Matthew Fernandez could identify petitioner in the line-up, but could not identify him at trial, and that Cornelius Ware could have mistakenly identified petitioner.  The trial court nevertheless concluded

that the lineup was not unduly suggestive or so suggestive as to impermissibly taint Diaconescu's identification of petitioner.

The Michigan Court of Appeals also concluded that the lineup was not unduly suggestive. The Court of Appeals stated that physical differences between petitioner and the other men in the lineup went to the weight of the evidence, not its admissibility. This Court finds it unnecessary to determine whether the lineup was impermissibly suggestive because, even if it were, there was an independent basis for Diaconescu's identification of petitioner at trial.

### b. Independent Basis

"[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200.

### i. Opportunity to View the Suspect

The first Biggers factor assesses the witness's opportunity to view the defendant at the initial observation. Diaconescu testified that he saw petitioner and another man approach his truck. After petitioner fired his gun into the truck, Diaconescu exited his truck and ran. Petitioner chased him, and when he noticed that petitioner was getting close to him, he stopped and threw the contents of his pockets on the ground. He was "face to face" with petitioner and one and a half to two feet away from him. Although it happened quickly and was almost dark outside, he could see petitioner's face clearly, and he was able to determine that the handgun was a revolver. (Trial Tr. Vol. I, 12-15,

23-25, July 19, 2010.)  The Court concludes from Diaconescu's close encounter with

petitioner that he had a good opportunity to view the shooter.

### ii.  Degree of Attention

The second Biggers factor assesses the witness's attentiveness during the initial

observation.

> To analyze the sufficiency of an eyewitness's degree of attention, [courts]
> generally examine the circumstances surrounding the witness's encounter.
> United States v. Thomas, 116 Fed. Appx. 727, 736 (6th Cir. 2004),
> vacated on other grounds, 543 U.S. 1116, 125 S.Ct. 1104, 160 L.Ed.2d
> 1064 (2005) (remanding in light of United States v. Booker, 543 U.S. 220,
> 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)).  [Courts] find more reliability
> where a witness was able to view the assailant with a "heightened degree
> of attention, as compared with disinterested bystanders or casual
> observers." United States v. Crozier, 259 F.3d 503, 511 (6th Cir. 2001)
> (quotation omitted).   Generally, [courts] place greater trust in witness
> identifications made during the commission of a crime because the
> witness has a reason to pay attention to the perpetrator.  See United
> States v. Meyer, 359 F.3d 820, 826 (6th Cir. 2004) (finding heightened
> degree of attention where witness spoke with robber and studied his
> features while looking for an opportunity to escape); Crozier, 259 F.3d at
> 511 (finding heightened degree of attention where robber confronted
> witnesses with a gun).

Howard v. Bouchard, 405 F.3d 459, 473 (6th Cir. 2005).

Diaconescu's detailed description of the crime and his fairly thorough description

of the suspect, see infra section III,A.2.iii, indicates that he was attentive during his

encounter with petitioner.   His attention, no doubt, was heightened by the fact that both

suspects were armed.  His heightened attention likely became greater when he heard

gunshots. See Howard, 405 F.3d at 483 (finding that the witnesses' "heightened

attention became greater when the shooter began to fire shots").  The Court concludes

that Diaconescu was attentive during the initial observation of the shooter.

### iii.  Accuracy of Description

The third <u>Biggers</u> factor examines the accuracy of the witness's prior description of the defendant.  Diaconescu described petitioner to the police as a black male, age 21 to 22, dark complected, 6' to 6' 2", 200 pounds, thin, full beard, and armed with a handgun.  (Trial Tr. Vol. I, 64, July 19, 2010.)  Petitioner claims that he was 180 pounds at the time and that he had a full goatee and mustache.  Pet. at 26.  A goatee with a mustache is similar to a beard, and a difference of twenty pounds is not a large difference on a tall person.  Cornelius Ware, moreover, gave a similar description of the suspect to the police,[1] and, according to Investigator Emerson, the description fit petitioner.  (Trial Tr. Vol. II, 44-45, July 20, 2010.)  Furthermore, although petitioner alleges that Diaconescu's description of him was not detailed, the description provided facts regarding the suspect's race, gender, age, complection, height, weight, body type, and facial hair of the suspect.  The Court concludes that Diaconescu's description was detailed and fairly accurate.

### iv. Level of Certainty at the Pretrial Identification

The fourth <u>Biggers</u> factor examines the witness's level of certainty at the pretrial confrontation.  Diaconescu stated repeatedly at trial that he picked the right person. (Trial Tr. Vol. I, 28, 31, 51-52, July 19, 2010).  There is no evidence that anyone told Diaconescu that he picked the right person, and he never equivocated about his identification of petitioner.  The Court therefore concludes that Diaconescu was certain of his identification.

---

[1] Ware described the suspect as a black male, age 22, dark complected, about 6' 3", 160-170 pounds, slim, low-cut beard, and armed with a revolver.  (Trial Tr. Vol. II, 43-44, 50, July 20, 2010.)

-13-

### v.  Length of Time

The fifth and final Biggers factor looks to the length of time between the crime and the identification.  Diaconescu identified petitioner at the lineup on January 13, 2010.  This was a mere six days after the crime.  Diaconescu also identified petitioner at the preliminary examination about two months later on March 4, 2010, and at trial four months after that on July 19, 2010.  The length of time between the initial observation at the crime scene and the first identification of petitioner was not lengthy.  Nor were the subsequent gaps in time lengthy.  The Court therefore finds that the length of time between the crime and the identifications was not significant.

The Court concludes from the totality of the circumstances that there was an independent basis for Diaconescu's in-court identification of petitioner.  Diaconescu had a good opportunity to view the suspect, his attention likely was heightened by the presence of a gun and the shooting, his description of petitioner was accurate, he was sure of his identification, and the length of time between the crime and the identification was not lengthy.  Consequently, Diaconescu's identification was reliable enough to overcome any suggestiveness in the lineup and to be admissible.

The state appellate court's rejection of petitioner's claim was not contrary to Biggers.  Therefore, petitioner is not entitled to habeas corpus relief on the basis of his first claim.

### B.  The Sufficiency of the Evidence

The second and final habeas claim challenges the sufficiency of the evidence at trial.  Petitioner claims that Diaconescu's identification testimony and the trial court's findings and conclusions were against the great weight of the evidence.  Petitioner also

-14-

claims there was insufficient evidence that he committed the crimes.

Although Diaconescu identified petitioner as the person who robbed and fired a handgun at him, petitioner contends that Diaconescu was subjected to an unduly suggestive line-up.  Petitioner points out that there was no physical evidence tying him to the crime, and he claims that Fernandez and Ware could have been lying.  According to Petitioner, the only incriminating evidence came from Diaconescu whose testimony was inherently incredible and unworthy of belief because it was contradicted by other witnesses and evidence, because he lied to an investigator about the phone service he used, and because he attempted to thwart the investigation to prevent the police from learning about Shana.

The Michigan Court of Appeals adjudicated petitioner's claim on the merits and opined that Diaconescu's testimony was not patently incredible, inherently implausible, or seriously impeached.  The Court of Appeals also opined that a reasonable trier of fact could have found that the prosecution established petitioner's identity.  The Court of Appeals concluded that there was sufficient evidence to convict petitioner of each of the enumerated crimes.

### 1. Legal Framework

The contention that Diaconescu's identification testimony and the trial court's finding of guilt was against the great weight of the evidence is a state-law argument, and a federal habeas court may review only issues of federal law. Nash v. Eberlin, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). Thus, petitioner's weight-of-the-evidence argument is not a basis for habeas corpus relief. The only "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

"A defendant challenging the sufficiency of the evidence 'bears a very heavy burden.' " United States v. Prince, 214 F.3d 740, 746 (6th Cir. 2000) (quoting United States v. Wright, 16 F.3d 1429, 1439 (6th Cir. 1994)). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205 (citing Jackson, 443 U.S. at 319) (emphasis in original). Second, even if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id. (emphases in original).

-16-

## 2. Application

The <u>Jackson</u> standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  <u>Jackson</u>, 443 U.S. at 324 n. 16.  The Michigan Court of Appeals described the elements of the crimes for which petitioner was convicted as follows:

> "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." <u>People v. Jackson</u>, 487 Mich. 783, 787; 790 NW2d 340 (2010).  "The elements of armed robbery are: (1) an assault; (2) a felonious taking of property from the victim's presence or person; and (3) while the defendant is armed with a weapon." <u>People v. Smith</u>, 478 Mich. 292, 319; 733 NW2d 351 (2007). The elements of felony-firearm are (1) defendant carried or possessed a firearm (2) defendant possessed or carried the firearm during the course of a felony or an attempted felony. <u>People v. Duncan</u>, 462 Mich. 47, 50; 610 NW2d 551 (2000), quoting CJI2d 11.34.  Finally, regarding felon-in-possession, "a person convicted of a specified felony is prohibited from possessing a firearm until five years after he has paid all fines, served all terms of imprisonment, and completed all terms of probation or parole imposed for the offense." <u>People v. Perkins</u>, 262 Mich. App. 267, 270; 686 NW2d 237 (2004), quoting MCL 750.224f(2)(a).

<u>Patwin</u>, 2012 WL 164077, at *5.

Petitioner is not challenging any specific element of these crimes.  Rather, he claims there was insufficient evidence that he committed the crimes.  "The identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt."  <u>Byrd v. Tessmer</u>, 82 F. App'x 147, 150 (6th Cir. 2003) (citing <u>People v. Turrell</u>, 25 Mich. App. 646; 181 N.W.2d 655, 656 (1970)).  But "[i]f the evidence at trial was sufficient to permit [the trier of fact] to find beyond a reasonable doubt that the man seated at the defense table was the same person referred to in the account of the offense, then there is no reason to overturn the

-17-

[factfinder's] conviction based on the government's alleged failure to prove identity."
United States v. Thomas, 763 F.3d 689, 694 (7th Cir. 2014).

Samoil Diaconescu identified petitioner at trial as the man who shot at him with a handgun and took his money, cell phone, and identification after chasing him and firing his gun at him several times. (Trial Tr. Vol. I, 13-15, July 19, 2010.) Cornelius Ware could not identify petitioner at trial (Trial. Tr. Vol., II, 17, July 20, 2010), but he identified petitioner at the pretrial line-up as the man who "had a gun and shot me." (Id. at 15-16.) Furthermore, the parties stipulated that petitioner had a prior felony conviction and was not eligible to carry a weapon on the date in question. (Trial Tr. Vol. I, 79-80, July 19, 2010.)

A rational trier of fact could have concluded from this evidence taken in the light most favorable to the prosecution that petitioner: robbed and assaulted Diaconescu while armed with a weapon; assaulted Cornelius Ware with a dangerous weapon and with the intent to injure him or place him in reasonable apprehension of an immediate battery; possessed a firearm during the commission of either a robbery or a felonious assault; and was a felon in possession of a firearm. Although petitioner claims that Diaconescu's testimony was incredible and contradicted by other evidence,

> [a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. Neal v. Morris, 972 F.2d 675, 679 (6th Cir. 1992).

Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003). Thus,

> [a]n assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. Gall v.

Parker, 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of
sufficient evidence to convict therefore defeats a petitioner's claim.  Ibid.

Id. at 788-89.

The state appellate court's conclusion – that the evidence was sufficient – was
objectively reasonable and not contrary to Jackson.  Petitioner therefore has no right to
relief on the basis of his challenge to the sufficiency of the evidence.

## IV.  CONCLUSION

The state appellate court's adjudication of petitioner's claims was not contrary to
Supreme Court precedent, an unreasonable application of Supreme Court precedent, or
an unreasonable determination of the facts.  In addition, petitioner's first claim is
procedurally defaulted.  Accordingly, the habeas corpus petition (Dkt. #1) is **DENIED**.

## V.  REGARDING A CERTIFICATE OF APPEALABILITY
## AND THE APPELLATE FILING FEE

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no
automatic right to appeal a district court's denial or dismissal of the petition.  Instead,
petitioner must first seek and obtain a [certificate of appealability.]"  Miller-El v. Cockrell,
537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant
has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §
2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason
could disagree with the district court's resolution of his constitutional claims or that
jurists could conclude the issues presented are adequate to deserve encouragement to
proceed further."  Miller-El, 537 U.S. at 327.

Reasonable jurists would not find the Court's assessment of petitioner's

constitutional claims debatable or wrong, nor conclude that the issues are adequate to

deserve encouragement to proceed further.  The Court therefore declines to grant a

certificate of appealability.  Nevertheless, if petitioner chooses to appeal this decision,

he may proceed in forma pauperis on appeal because an appeal could be taken in good

faith.  28 U.S.C. § 1915(a)(3).

Dated:  February 11, 2015

                              s/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 11, 2015, by electronic and/or ordinary mail and also
on Nathan Patwin #527363, Earnest C. Brooks
Correctional Facility, 2500 S. Sheridan Drive,
Muskegon Heights, MI 49444

s/Barbara Radke
Deputy Clerk